is case number 2021-11174, Franciscan Alliance v. Xavier Becerra et al. You may proceed with your argument. Good morning, Your Honor, and the court. McCain Newmeister on behalf of the government. The district court erred in entering permanent injunctive relief against HHS based on positions that the agency has not actually adopted and in the absence of an Article III case or controversy. Most fundamentally, this case is moot. As presented in the operative complaint and consistently litigated by plaintiffs for the first four years of this long-running case, this lawsuit involves a RFRA challenge to HHS's 2016 rule implementing Section 1557. Indeed, that was the district court's understanding in issuing final judgment in October 2019, vacating the challenge portions of the 2016 rule on APA and RFRA grounds. But plaintiffs wouldn't take yes for an answer. They've continued to litigate this case for the past several years because the district court declined to also initially grant them a permanent injunction in issuing its final judgment. However, plaintiffs suffer no ongoing harm from the challenge provisions of the 2016 rule because the district court vacated them and HHS rescinded and replaced them. This litigation is thus moot. If plaintiffs wish to challenge the agency's more recent actions, they're free to bring a new lawsuit seeking to do so. But the limits of Article III and principles of finality prevent them from retroactively reframing this litigation in order to seek broader relief here. Accordingly, the district court's permanent injunction should be vacated, and this long-running case should be brought to a close. Now, to start with the issue of mootness, Your Honors, in this case, plaintiffs challenged only the 2016 rule. What exactly, specifically, is it just the vacated, period? Is there something, what do you believe is the appropriate relief, I guess I should be asking? The relief that was granted in this case, Your Honor. The district court vacated the 2016 rule, vacated two specific rules. Right, no, I'm so sorry. I'm trying to, what is it that you wish us to do specifically? Oh, sorry, Your Honor. Yes, we would ask this court to vacate the permanent injunction and remand this case with instructions to dismiss the case for lack of jurisdiction. So, that's because, Your Honor, we view this case as moot because plaintiffs brought this as a challenge to the 2016 rule, and they're no longer harmed by that rule because it was vacated and then rescinded and replaced. Doesn't the challenge, though, extend to the Section 1557 as well? So that's how plaintiffs are trying to frame their case now, Your Honor, but they didn't seek to challenge the statute in initially bringing this case in 2016, and that's not how they litigated the case for the first four years of the case through final judgment. And that's clear from the language in the complaint, which focuses on, repeatedly, quote, the regulation. In their accounts under RFRA and in their prayer for relief, that's what they were focusing on. And it's also clear from how they briefed the case at summary judgment and the district court's understanding. In the district court's October 2019 opinion, it explains that what plaintiffs were seeking here was to vacate the 2016 rule and to get a permanent injunction against the 2016 rule. The district court declined to grant that injunction because the district court said that once the rule is vacated, they're not going to be harmed by the 2016 rule. That just demonstrates that that's what was at issue in this case, as it was framed in the pleadings and as it was litigated by the parties. How does our prior opinion affect that interpretation? So I don't think your prior opinion necessarily calls that into question, Your Honor. What we understood this court to be doing in remanding in April of 2021 was simply noting that a lot had transpired in this case that made it difficult to assess what was actually going on. But I thought we contemplated that it could be statutory. I don't think that's what the opinion did, Your Honor. I think what the court said was that the case should go back down so that the question could be addressed in the first instance, whether there actually was a statutory challenge brought here, or whether that's not what was actually being sought in this case, so that the parties in the district court could sort out what was at issue, what relief were they entitled to, and what were the jurisdictional implications of everything that's transpired since the case was filed, which is now six years ago. But then didn't the district court sort it out that way? The district court did decide that there could be now this challenge to the statute itself, Your Honor. But we think that that's an incorrect understanding of what's actually at issue in this case, and violates core principles of Article III in finality to permit a party to essentially change the nature of its claims and the scope of relief sought after already entering final judgment in the party's favor. If that were permissible, Your Honor, then cases like this would never actually end. But we had our—but as part of our appeal and sending it back, we invited the district court to look at that issue. I think the court invited the district court to consider that issue, Your Honor. And there's simply nothing that was pointed to below or that the district court said to indicate that this, in fact, was a challenge to the statute. The district court instead pivoted in this case and said, well, it's actually about the burden. But that's not—that's not correct, Your Honor. It's about what agency action was being challenged that was allegedly imposing a burden under RFRA. And that was the 2016 rule as explained in the complaint and litigated in this case. The ACLU, who will be arguing in a bit, sent us something that said, hot off the press, there's something else that cancels this out, but noted that—or, well, the other—the other side's 28J noted that the government doesn't take that position. Is that true, that the federal government doesn't take that position? So, Your Honor's referring to the NPRM, that— Yes. Yes. So, the government doesn't take the position that that moots this case. However, it does underscore the extent to which this case is not ripe. It just further demonstrates that the agency is still working through these issues, is inviting comment on issues that parties can participate in the rulemaking process before the agency issues the final rule. And it just fundamentally demonstrates that what we have here is speculation about what position the agency is ultimately going to take and whether the agency is ever actually going to apply any new rule or the statute. On that point, so the last time we heard argument in this case, which was a year and a half ago, I think, we asked if you, the government, could promise that plaintiffs would not face prosecution or an enforcement action for refusing to offer gender reassignment surgeries or abortion, and the government's response was no. And has that answer changed? It hasn't, Your Honor, but the answer is no because of the nature of the RFRA analysis and the nature of any enforcement action under Section 1557. It's necessary to actually look at a concrete, factual context in which the agency is asking the parties to do something in order to assess what the burden is on religious exercise, whether it's substantial, what the government's interest is, and whether the least restrictive means test has been satisfied. And as this Court and the Supreme Court have reiterated, it is a very fact-specific and context-dependent test that has to be applied on a case-by-case basis. You say factual scenario. You're not saying it has to be at the granule level when someone is coming in requesting the gender reassignment surgery or an abortion, are you? You're not saying it has to be at that granule level, are you? Not necessarily, Your Honor, but we have to have a concrete, factual scenario in which to analyze. What would be concrete enough, then? I think it is very possible that you would have to have a scenario where a provider is to the agency and files a complaint, and then the agency has to go through the process of determining whether there was a violation of the statute. So they have to make a decision, a split-second decision, and be on the defense. They can't just say that would be that the whole regulation is against their religious views of their organization. Well, Your Honor, the problem with that is that RFRA doesn't permit that kind of categorical resolution, which is what the Supreme Court recognized in the Ocentro case. The government tried to give a categorical argument for why it couldn't grant RFRA exemptions, and the Supreme Court said, no, you can't do things on a categorical basis. You have to analyze the actual facts in a situation where a RFRA exemption is sought and determine whether the government's interest justifies any burden on religion in that context. Is there any daylight between gender reassignment and abortion in light of the Supreme Court's case law, or are those just treated exactly and lockstep the same? I'm not saying they should be treated differently. I'm just asking what's the government's position. Your Honor, I don't want to get out ahead of the agency in taking a position on how any future NPRM is going to apply with respect to those services. What I can say is that Section 1557 is a very—and I see my time is about to expire. If it's all right if I answer your question. Please answer the question.  Section 1557 is an anti-discrimination statute, and so it doesn't require the provision of any particular treatment to treat any specific condition. All it does is prohibit discrimination. And so what's required by the agency is to assess factual circumstances and determine whether a decision was discriminatory under the circumstances, which is a very fact-specific determination that really needs a concrete factual context to be pursued for any providers. For non-religious providers, it's still this kind of fact-intensive determination the agency makes. And for religious providers, it is as well, with the extra added layer of the fact that the agency also considers RFRA in its decision-making and will adjudicate any kind of religious objection at the outset before deciding whether to proceed with any investigation to determine whether it's a violation of the statute. I think you've answered my question. Did you all have anything else? You still have time for rebuttal. Thank you, counsel. Good morning, Your Honors. Joshua Block for the interveners, and I'm very happy for the opportunity to address some of the questions that have come up this morning. The first thing I want to clarify is that we absolutely do not think the NPRM moots this dispute. We think that the dispute is not moot, and in part because mootness and standing go to a court's power to reach the merits of a dispute. The merits of this dispute have already been decided. They were decided in 2019, and we're at the remedial phase. The question is, what remedy are plaintiffs entitled to having won this case in 2019? This court has said time and again that an injunction has to be narrowly tailored to the specific violation that was pled and proven in court. Our view is we have to look at the 2019 decision, find out what violation the district court found, and then see if the injunctive relief they're requesting matches up to it. If you look at the 2019 decision, the court says the problem with the 2016 regs were that they weren't narrowly tailored. They expressly prohibited religious exemptions, and the government made no effort to show that providing an exemption to the plaintiffs would result in any harm. So that— —sent the case back because the court may have been too—not comprehensive enough in its judgment, and that's something that the court could look at, and then it did. So we don't look at only the judgment from 2019, then, do we, to decide what remedy? We have to look at what the ultimate decision of the court was across the whole spectrum of the things that the court was allowed to consider. Your Honor, I think that your questions on remand said—asked the court, should it issue an injunction, or alternatively, was the statute never challenged? And we were left with a situation where the plaintiffs argued that we weren't allowed to give any defense on the merits. There's been no opportunity to defend Section 1557 on the merits. That's not what the remand order contemplated. That's not what the district court's briefing order contemplated. If they want to challenge it, we're not saying they don't have standing. That can be sorted out in a separate lawsuit, but there has to be an opportunity to actually defend the statute, and that has—that opportunity hasn't happened yet. But even if you look at the 2019 decision, if you look at Record Excerpt 65, you know, the district court says that the current Section 1557 regulatory scheme substantially burdens the plaintiff's religious exercise in violation of RFRA. To the extent that they're challenging the current regulatory scheme, we have no problem with an injunction. Our problem is an injunction that preemptively gives them—prevents HHS from ever attempting to enforce the statute in a more narrowly tailored way. And I really would love to talk about the NPRM, because I think it makes three huge changes that, whether or not you think those changes satisfy RFRA, it's a dramatically different case than what was presented to the district court. First, the 2016 rule required the plaintiffs in their own self-funded health plans to provide coverage for these procedures. The NPRM eliminates that. If they're providing self-funded plans, they don't have to provide any coverage for these procedures at all. An insurance company in a private health plan has to provide coverage, but for a self-funded health plan, which is what these plaintiffs have, they don't need to. Second, the 2016 rule prohibited religious exemptions. This rule specifically creates a process for them. And our understanding of the rule is that plaintiffs can come in advance and say, we have this policy. We refuse to provide abortions in any circumstances. And the government, at that point, at the outset, could say, well, will you provide  And my understanding is that they won't do that. My understanding is also that if a transgender person is brought to the hospital after a car accident, they won't provide a continuation of hormone therapy while that person is being treated. Those are two very concrete examples where the narrow tailoring analysis is going to be very, very different. And our concern is that the injunction that the district court issued, to the extent that preemptively enjoins future applications, is going to prevent that from even being adjudicated on the merits. And then the final thing I'd just like to say is the plaintiffs talk repeatedly about their objections to the substantial burden that's imposed on them. But RFRA doesn't prohibit substantial burdens. It only prohibits them when they're not the least restrictive means of advancing a compelling interest. And to preemptively say that HHS could never make that showing in whatever future regulation they pass, I think it goes beyond the court's powers under Rule 65, and it violates Article 3's prohibition on advisory opinions. I know I'm out of time, but I welcome any questions the court has. Thank you very much. Thank you. Good morning, Your Honors, and may it please the court. My name is Joe Davis, and I represent the plaintiffs at police. Your Honors, you just heard a lot of the defendants sort of pretending to be confused about what this case was about and the relief that the plaintiffs were seeking from the get-go. But I think Judge Elrod, you were exactly right when you referred to this court's prior opinion and its relevance to that question. This court, in the prior appeal, remanded to Judge O'Connor and said, Judge O'Connor, you tell us what you think was in front of you. And what the plaintiffs were seeking, and what the appropriate relief would be. And Judge O'Connor answered that question. And this court said that the district court, when the question is about whether a plaintiff's conduct before the district court has resulted in some waiver, that the district court is in the best position to evaluate what's in front of it. And Judge O'Connor answered that question. That decision is subject to abuse of discretion review. I think we'll see that Judge O'Connor was— Abuse of discretion because they didn't have a fair shot to challenge the statute. Uh, no, Your Honor. I think that's— To challenge that the statute couldn't be, you know, walk side by side with what your demands are. Right. And, Your Honor, I think that's exactly wrong. And I think what the defendants are doing is they're mixing up sort of the merits and justiciability. So RFRA is a burden-shifting regime. When the plaintiff comes in and says, I'm seeking an exemption, my religious exercise is being substantially burdened by some requirement, then the government has to come in and carry its burden. It has to show that it has a compelling interest in forcing the plaintiff to violate his religious exercise and if it's the least restrictive means of doing so. The government didn't carry that burden. And when you have a burden-shifting regime, the proper thing to do when the defendant fails to carry its burden is to bang the gavel and the plaintiff wins. And I think there's a reason that the government hasn't really made much of an effort on the  To the extent that's true, I think we'd quibble with that because the Obama administration, when this case was first filed, did, in fact, resist on the merits at the PI stage. But the reason is that the merits are easy. I mean, look at the contraceptive mandate cases. There you've got just contraceptives and just insurance. And the government is saying, you must provide those. Courts around the country addressing the RFRA claims in that context have said, you get a religious exemption. That's a clear violation of RFRA. No case goes yet. In your amended complaint, you don't mention the statute. You mention the regulation. Isn't that correct in the RFRA part of your amended complaint? Your Honor, it's certainly true that we focus a lot on the regulation. That's what the government had just done. That was the precise mechanism in which they were imposing the burden on a religious exercise. But I think it's absolutely critical to keep in mind what RFRA is about. RFRA is about burdens. So it's distinct from an APA claim. In the APA context, plaintiffs, you're attacking a regulation. You're saying this regulation is inconsistent with the underlying statute. In the RFRA context, you're attacking a burden and saying it can't be justified on strict That's correct, Your Honor. And that's consistent with the Supreme Court's recent decision in FEC versus Cruz. There, it's the First Amendment. Here, it's RFRA. But the point is, when you're attacking a regulation, there's no real distinction between a regulation and a statute because a statute, a regulation only has any effect on the plaintiffs whatsoever to the extent it's authorized by the underlying statute. So then to come in and say there's some daylight between you were just attacking the regulation. You weren't attacking the statute. Well, the regulation only has any effect on us whatsoever to the extent it's consistent with the statute. Your Honor, if I could, I'd just like to... So putting aside your RFRA claims for a moment, do you concede that your APA claims are moot? Because there was a line in your brief that made me think you conceded your APA claims were moot. I don't think the APA claims are moot. I think they're just over. We got a ruling on the merits. OK. Because the line in your brief was Vacatur remedied plaintiff's APA claims, but didn't provide complete relief under RFRA. That's correct, Your Honor. District Court gave us Vacatur on the APA claims. I think that was exactly the right relief. And we didn't appeal from that. And the government didn't appeal from it either. That part of the case is just over. What we appealed from was the denial of an injunction on our RFRA claims.  That's correct, Your Honor. But I think it's exactly that distinction between the two types of claims that the government and the ACLU are conflating here and that's important for us. I think if we just back up and just walk through ordinary article 3 and remedies principles, I think the answer here becomes quite clear. So the plaintiffs have standing because in 2016, HHS explicitly interpreted Section 1557 to prescribe their conduct. The case isn't moot because to this day, HHS and courts around the country continue to interpret the statute in exactly the same way. And the district court didn't abuse its broad equitable discretion in granting the injunction that we're talking about here. Instead, it simply followed the analogous injunctions that have been entered in the precisely analogous context. The contraceptive mandate, there's at least 20 injunctions that are just like the one that Judge O'Connor gave us here. And the transgender, the very same issue we're talking about here today, the transgender mandate, the Christian Employers Alliance case and the Sisters of Mercy case from North Dakota, entered the exact same injunction that we're talking about here. So just to walk through this on standing. Everybody agrees that the relevant test here is the Susan B. Anthony test. It's, is the plaintiff's conduct arguably affected with a constitutional interest? Is the plaintiff's conduct arguably prescribed by the challenged law? And have the plaintiffs shown a credible threat of enforcement? I didn't hear any dispute onto that first element. I don't think there's any in the briefs. The plaintiff's conduct is arguably affected with a constitutional interest. On the arguably prescribed piece, I think there shouldn't be much of a dispute about that either. Because again, you have the 2016 rule, which explicitly prescribed the plaintiff's conduct. Although the last administration tried to pull it back, that effort was unsuccessful. The 2016 rule remains in the books. And then you have Section 1557 itself, independent of the rule. You have courts around the country considering cases in exactly this context. Plaintiffs, including some represented by the interveners here, suing religious hospitals and saying, you're violating the statute by categorically excluding gender transition procedures. And those cases have been successful. So it's harder to imagine a clearer case of the plaintiff's conduct being at least arguably prescribed, or as this court said in the Barilla case, it's at least plausible that the statute prescribes the plaintiff's conduct. This is not a case, though, where there are dueling injunctions that overlap, right? Those have been specific as to specific institutions, the other injunctions, and the injunction here. So there's not a, you're a violation of somebody's injunction because everybody's doing nationwide or something. This is not that circumstance, correct? That's correct, Your Honor. The other cases that I was just referring to are cases against particular hospitals. Right. That's what I thought from the briefing, but I just want to make sure. So there's not, it's just the particular institution has either been told it must provide these or told that it doesn't have to. That's right, that the plaintiffs have shown a prima facie case against other institutions. That's correct. So that's arguable prescription. Last element is credible threat of enforcement, and I'll just touch on this briefly, but it's hard to imagine a case with a clearer credible threat of enforcement than this. There's a presumption of a credible threat of enforcement under Speech First and under Barilla when you have a recently enacted or at least non-moribund statute that arguably prescribes the plaintiff's conduct. It's indisputable that that presumption applies here. And the presumption is simply confirmed by a number of things, but most compellingly by the motion to modify the injunction that the government filed below. So they've been saying up and down. They told this court. They told the district court. Plaintiffs have nothing to worry about. The case isn't right. It's not clear enough that their conduct is prescribed. As soon as Judge O'Connor gave us the injunction, the government ran back into court and said, wait, we have a problem. We actually are enforcing the statute in exactly this way, and we're worried that we're going to violate your injunction by enforcing it against these plaintiffs unless you make it clear to us who the plaintiffs are and give us some mechanism of figuring that out. Judge O'Connor agreed with that, of course. But the point is that it's hard to imagine a clearer case of a credible threat of enforcement when the government is telling you, telling Judge O'Connor, there's a serious risk that we're going to be violating the injunction by enforcing against these plaintiffs. So that's standing. And the government has put a lot of it into some mootness, right? So the question is, we have standing. Has something changed since the case was filed that's rendered the case moot? And the answer is clearly no. For cessation of conduct to moot a case, there has to be an actual cessation. If the conduct doesn't cease, if it continues, then, of course, there can be no mootness. That's what this court said a number of times. Judge Elrod said it in Opulent Life Church. There's the Texas versus Biden case. There's the Supreme Court's decision in the city of Jacksonville case. And those precedents are on all fours here. The relevant conduct, interpreting section 1557, requires government entities to perform and ensure gender transitions and abortions, has never ceased. So there's the 2016 rule, which is still on the books today, under the Walker and Whitman-Walker injunctions and other courts. There's the 2020 rule, which, when you read it in light of Bostock, imposes exactly the same requirement that the 2016 rule did, whatever its intent was. And then there's the statute itself, which, again, HHS does not need. It doesn't need a separate rule in order to simply enforce the statute. And it's told us that explicitly in the 2021 Notification of Enforcement, where it said, regardless of any underlying rule, we're interpreting the statute from this day forward to prescribe gender identity discrimination. And then you have the guidance document that HHS issued in 2022, which said, attempts to restrict gender transition procedures are dangerous and likely violate section 1557. So that's, again, under the statute itself, not under any particular rule. So the conduct here, the challenge conduct, has never actually ceased. So even if it could be thought that the new NPRM narrows it some and might make it appropriate if it were analyzed, and I'm not prejudging that issue, that that's irrelevant? I think it is. If the statute had to be interpreted in light of the NPRM and it would narrow it down enough, we don't look at that anyway. I think that's right. I think that's consistent with the government and what ACLU just told you. They conceded that under justiciability principles, the proposed rule isn't really in front of the court. The Supreme Court said that a number of times, that just when an agency rolls out a new proposed rule, it doesn't affect the justiciability of a current challenge, because it's just a proposal, right? Who knows if it'll ever be actually enacted? Who knows how long it'll take? That's the West Virginia v. EPA case. That's the National Association of Manufacturers case. It's just that it's because the government is interpreting the statute in a way that is violative, but it might have to interpret it in a more narrow way if it came in the next. So that may not be the government's interpretation anymore. By the time the rule is actually finalized? That's exactly right. They're actually required to consider people's input and make changes as appropriate. But I'd be glad to talk about the proposed rule, because I think it actually only confirms the justiciability of this case, to the extent you want to look at it. I mean, the proposed rule is explicitly reinstating the 2016 rule on almost every relevant front. It's saying that sex discrimination under Section 1557, yes, the 2016 rule was right. It includes gender identity discrimination and termination of pregnancy. It's saying it rejects a religious exemption, just like the 2016 rule did. And I think ACLU just told you that there was some daylight on that front, but I just remind the Court that the 2016 rule said, we're not going to have a religious exemption on the text of the rule, but we promise we'll comply with RFRA as it's being enforced. That wasn't sufficient to prevent challenges to the 2016 rule that plaintiffs had standing to bring. That's all the 2022 NPRM says. It says exactly the same thing. There's no religious exemption. It actually disagrees with the Franciscan Alliance, with the district court in this case, saying we're not going to include a categorical religious or abortion exemption, and we're not bound by that decision, because it was just a, you know, it was just a vacater of the 2016 rule. And then there was some talk about the religious notification process. This is not an exemption. This is not cessation of the challenge conduct whatsoever. It's just a, it's a notification process. So plaintiffs can come in and tell HHS that, you know, we might have a problem with this particular application of the rule, but HHS isn't required to give them an exemption. It's not even required to consider that objection, unless it gets the concrete case that, you know, a case from a specific claimant in the way that you were talking about, Judge Elrod. And that's just another way of saying, we don't want any pre-enforcement challenges. But of course, HHS is not in charge of that. The courts are. There's Article III requirements that, for how pre-enforcement challenges work. In this case, satisfies those. So I think even if you were to look at the 2022 FBRM, we would welcome it because it only reinstates the challenge conduct here. But I don't think it's before the court. And so what exactly do you want us to do? We want you to affirm Judge O'Connor's well-reasoned opinion, affirm the injunction that he provided, which... And we don't need to tweak it in any way. No, Your Honor. It provides durable protection in exactly the way that And I think just on that note, I want to bring my presentation to a close. But I think there's a reason that HHS is, before you, throwing out every Article III argument under the sun that it can come up with. There's a reason that ACLU tried to frame its arguments in terms of Rule 65, although I think it ended up giving up on those by the reply stage. And that's because the district court has broad equitable discretion in crafting the terms of an injunction. This court said that a number of times. The Supreme Court said it a number of times. And having found that HHS violated RFRA by threatening the plaintiffs with Section 1557's penalties unless they performed and ensured these procedures, then the natural result was an injunction that said, you don't get to do that anymore, HHS. You don't get to do that. And that result simply followed the 20 identical injunctions in the contraceptive mandate cases, the two injunctions in the transgender mandate cases. And HHS hasn't cited a single case going the other way. There's no case that supports the notion that the injunction had to be limited in the way that they're suggesting. So, unless there are further questions, Your Honors, I'd bring it to a close with a couple of other remarks. I think we have your argument. Thank you, Judge Norbert. Ms. Neumeister, you said time for rebuttal. Thank you, Your Honor. There are just a couple points that I wanted to touch on with respect to standing mootness and the fact that this is a pre-enforcement challenge. So, with respect to standing, it has to be analyzed at the time that the operative complaint was filed here. And that significant temporal disconnect means that the court would have to disregard six years of regulatory and judicial developments in trying to assess whether there was a credible threat of enforcement back in 2016. And that sort of bizarre scenario just underscores the extent to which the case plaintiffs are trying to bring now is fundamentally different than the case that they brought when they filed their operative complaint. The right course of action here, Your Honor, is to dismiss this case as moot, enable plaintiffs to bring a new lawsuit challenging new agency actions that are now harming them. And that new lawsuit would be a cleaner vehicle for assessing the complicated question of standing in this case because the court there could look at all of the intervening developments and trying to assess whether there is, in fact, standing for a pre-enforcement challenge. The second point, Your Honor, is that my friend on the other side said that a credible threat is presumed under these circumstances and that's simply not correct. If you look at the speech first decision, it was only saying that when you have a very specific set of facts where there is speech that is facially prescribed by a statute. Under those circumstances, the credible threat prong is analyzed differently. But that makes sense because you're dealing with chilling on speech in that context. That's not what we have here. Plaintiffs have never asserted before this court that the religious exercise is currently being chilled. With respect to... And furthermore, Your Honor, I'll just underscore there is no credible threat here because the agency has never brought an enforcement action against any objecting religious provider for declining to perform or cover gender transition services or abortions. There's simply no credible threat that that's going to happen here. The agency considers RFRA in undertaking investigations and will carefully consider those factors before it could even reach a point where there would be an enforcement action. So you're not sending letters saying you're not in compliance and that sort of thing? I'm not aware of any letter that's ever been sent to a religious entity saying that they're not in compliance with the statute because they're declining to perform... It's only the ACLU that's suing or some other entity. I'm not picking on your client. Is that the only posture that they come about in? There are private suits going on, Your Honor, but that doesn't inform whether the government is actually going to bring these lawsuits. Moreover, private suits, they don't involve RFRA. And RFRA is something the agency takes seriously and will consider before deciding whether to pursue any kind of investigation against religious providers. With respect to mootness, just to touch on it briefly, Plaintiff said that the action here never really ceased, and that's just simply not true. If you look at the June 2020 rule, at the time, the agency did not think Section 5057 covered gender identity discrimination. And the agency went beyond that and said that it saw, under RFRA, it saw no compelling governmental interest to make objecting religious providers actually perform or cover gender transition services. That was at 85 FEDRAG 37188. At the time, the agency clearly said there was no enforcement that was going to be happening against providers like plaintiffs. At that point in time, there was no burden on plaintiffs in the form of a threat of enforcement. The case became moot. It wasn't until almost a year later that the agency took the position that under Bostock, the statute also covered gender identity discrimination. The case was moot in June of 2020, and that ends this case, Your Honor. Briefly, with respect to pre-enforcement challenges, they're rare for a reason. The Court said, the Supreme Court, and the whole women's health case, there's no unqualified right to that kind of challenge. When you combine the difficult standard for pre-enforcement challenge with the fact-specific context of RFRA, and I see my time is up, Your Honor, I'll just finish. You can finish the thought. Thank you. When you combine the difficult standard to bring a pre-enforcement challenge with the fact-specific context required under RFRA, it's clear that there should not be these pre-enforcement RFRA challenges resulting in permanent injunctions against an agency for a position the agency has never taken in light of speculation that the agency might never seek to enforce a statute against certain providers. If there are no questions. Thank you. Thank you, Your Honor. I appreciate all of your arguments here today. Thank you. They've been very helpful. The Court will take the case under advisement, and this concludes today's special session of the Court. Thank you. Thank you.